UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON EUGENE MORRIS, | No. 2:11-cv-1171 TLN DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| A.J. R. BRADFORD, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants retaliated against him in violation of his First Amendment rights by denying him medication and access to the law library. Before the court is defendants' motion for summary judgment. For the reasons set forth below, this court will recommend defendants' motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's first amended complaint ("FAC") filed September 15, 2011. (ECF No. 12.) After filing an unsuccessful motion to revoke plaintiff's in forma pauperis status and an unsuccessful motion to dismiss, defendants filed a partially successful motion for summary judgment. (See ECF Nos. 32, 40, 54.) Judgment was entered for defendants on several claims because plaintiff failed to exhaust his administrative remedies prior to filing suit. (ECF No. 54.) Two claims remain – (1) Claim 1 - that defendants Bradford, Pina, and

1

Hamad retaliated against plaintiff for filing inmate appeals by refusing to allow him physical access to the prison law library and refusing to provide him with requested library materials from November 21, 2010, through March 28, 2011, and (2) Claim 3 - that defendants Auguayo[1] and Staggs-Boatright[2] retaliated against him for filing inmate appeals by refusing to give plaintiff Benadryl and by giving plaintiff the wrong dose of Tramadol in February and March 2010. Defendants filed an answer on April 1, 2015. (ECF No. 58.)

On January 14, 2016, defendants filed the present motion for summary judgment on the merits of plaintiff's claims. (ECF No. 70.) Thereafter, the court stayed these proceedings due to plaintiff's temporary transfer to a psychiatric program where he was not permitted access to his legal property. (ECF Nos. 86, 87.) In August 2018, after plaintiff was returned to the general population and again had access to his legal materials, the stay was lifted. (ECF Nos. 98, 99.) On November 1, 2018, plaintiff filed an opposition to the summary judgment motion. (ECF No. 103.) On November 8, defendants filed a reply.

**MOTION FOR SUMMARY JUDGMENT**

I.  **General Legal Standards**

   A. **Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or

---

[1] As explained below, it appears that plaintiff's FAC was erroneously construed to include a claim against Auguayo for conduct in 2010.

[2] This defendant is also referred to as "Boatright" in the parties' filings.

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.

However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197–98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary

3

judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**B. Civil Rights Act Pursuant to 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides as follows:

////

4

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

## II. Statements of Facts

Defendants filed a Statement of Undisputed Facts ("DUF") as required by Local Rule 260(a). (ECF No. 70-3.) Plaintiff's filing in opposition to defendant's motion for summary judgment fails to comply with Local Rule 260(b). Rule 260(b) requires that a party opposing a motion for summary judgment "shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Plaintiff's opposition to the summary judgment motion consists of argument and a declaration. (ECF No. 103.)

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendants' DUF or has shown facts that are not opposed by defendants. The court considers the statements plaintiff made in his verified first amended complaint and of which he has personal knowledge. The court has also reviewed plaintiff's sworn testimony given at his deposition. (See ECF No. 71 (Defs.' Notice of Lodging Depo. Trscrpt.).)

Below, the court lists the undisputed, material facts. Disputed material facts are addressed in the discussion of the merits of defendants' motion below.

5

**A. Undisputed Facts Regarding Plaintiff's Medication Claim**

- Defendant Auguayo had no contact with plaintiff in February and March 2010. (DUF No. 2.)
- In February and March 2010, plaintiff did not have a prescription for Benadryl. (DUF No. 5.)
- Defendant Staggs-Boatright had no authority to prescribe plaintiff Benadryl or to give plaintiff Benadryl without a prescription. (DUF No. 6.)
- Plaintiff does not know why Staggs-Boatright refused to give him his prescribed dose of Tramadol in March 2010. (DUF No. 10.)

**B. Undisputed Facts Regarding Plaintiff's Library Access Claim**

- Plaintiff understood that he could request library access by giving a form to a correctional officer or sending it through the prison mail. (DUF No. 14.)
- Defendant Bradford did not deny plaintiff's law library access requests in 2010-2011. (DUF No. 17.)
- Defendant Hamad was the Supervisor of Academic Instruction during 2010-2011 and it was not her duty to process, approve, or deny law library access requests during that time. (DUF No. 18.)
- Defendant Hamad did not deny plaintiff's law library access requests in 2010-2011. (DUF No. 19.)
- On December 17, 2011,[3] plaintiff submitted appeal no. 11-00154-10 in which he stated that he had sent several inmate requests and paging forms to the law library but had not been provided law library access or the materials requested. (Ex. C to Pl.'s Depo.)

////

---

[3] Defendants describe this date as "on or about December 25, 2010" in their Statement of Undisputed Facts. (DUF No. 21.) However, the appeals form plaintiff signed stated that he submitted it on December 17, 2010. (Ex. A to Plt.'s Depo.) Defendants provide no factual basis for the December 25 date estimate. In any event, whether the date is December 17 or December 25, this court's analysis of plaintiff's claims remains the same.

- Defendant Pina received that appeal on January 14, 2011. He responded to it on January 25, 2011. He informed plaintiff that he had received no requests for access to the law library since plaintiff was last there on November 8, 2010. When he returned the appeal to plaintiff, Pina also provided plaintiff with copies of the forms for physical access to the law library and copies of legal materials. (Id.; DUF Nos. 22, 23.)
- On February 3, 2011, plaintiff submitted appeal no. 11-00154-10 to the first level of formal review. (DUF No. 24.)
- On February 9, 2011, the appeal was assigned to defendant Hamad. (DUF No. 25.)
- On March 17, 2011, defendant Hamad interviewed plaintiff regarding his appeal. (Ex. C to Decl. of D. Hamad (ECF No. 70-6 at 9).)
- Hamad partially granted plaintiff's appeal and told plaintiff he had PLU (Preferred Library User) status at that point and would have access to the library within two weeks. (DUF No. 27.)
- Plaintiff had access to the law library on March 28, 2011. (DUF No. 28.)
- Plaintiff does not know why defendants refused to give him law library access. (DUF No. 29.)

### III. Analysis

Two of plaintiff's claims survived defendants' first summary judgment motion. In his first remaining claim, plaintiff made two allegations of retaliatory action by defendant Staggs-Boatright. In his FAC, plaintiff alleged that in February and March 2010 he "caught" defendant Staggs-Boatright "switching [his] meds and giving [him] pills [he] shouldn't" have been getting. (ECF No. 12 at 6.) Plaintiff contended that Staggs-Boatright did so in retaliation for appeals plaintiff filed against her. In the prison appeal he filed, plaintiff explained his claims against Staggs-Boatright in more detail. In appeal no. 10-10617-8, plaintiff stated that Staggs-Boatright refused to give him Benadryl which plaintiff required in order to take his other psychiatric

medications.[4] (Ex. B to Plt.'s Depo.)  In appeal no. 10-10858-8, plaintiff complained that on March 21, 2010 Staggs-Boatright gave him only one 50 mg. Tramadol pill when he was prescribed 100 mg.  (Ex. C to Plt.'s Depo.)

Defendant Auguayo is also mentioned by defendants in their discussion of plaintiff's medical claim.  However, in his FAC, plaintiff did not argue that Auguayo had violated his rights in February and March 2010.[5]  Rather, a close examination of the complaint shows that plaintiff's only allegation against Auguayo was that he "switched" plaintiff's medications in April 2011.  (See ECF No. 12 at 6.)  In his deposition, plaintiff again insisted that he was not alleging misconduct by Auguayo in 2010.  (Plt.'s Depo. at 51.)  Plaintiff's 602 appeals reflect only complaints about conduct by Staggs-Boatright in 2010.  (See Exs. B and C to Plt.'s Depo.)

In his opposition to the motion for summary judgment, plaintiff, apparently confused by the continual reference to conduct by Auguayo in February and March 2010, states that it occurred in February and March 2011.  Plaintiff appears to be recalling his claim involving conduct by Auguayo and Staggs-Boatright in April 2011.  That claim was determined to be unexhausted and is no longer part of this action.  (See ECF Nos. 46, 54.)  To the extent plaintiff is attempting to raise a new claim, he has provided no factual support for it and the court will not permit amendment of the complaint at this late date to raise it.  Defendant Auguayo should be dismissed based on the prior dismissal of plaintiff's claim against him.  (See id.)  Therefore, plaintiff's first surviving claim is his medical claim for retaliation against only Staggs-Boatright.

In his second surviving claim, plaintiff alleges defendants Bradford, Hamad, and Pina denied him law library access between November 21, 2010 and March 28, 2011 in retaliation for appeals he had filed against them.  (ECF No. 12 at 3-5.)

---

[4] In his opposition to the summary judgment motion, plaintiff states that "Not giving Plaintiff Benadryl is not an issue in this law suit." (ECF No. 103 at 4.)  Out of an abundance of caution, and because it was the subject of one of plaintiff's grievances, this court addresses it nonetheless.

[5] The court recognizes that in their prior motion for summary judgment, defendants identified this claim, claim 3, as asserting conduct by both Auguayo and Boatright.  (See ECF No. 43-2 at 3.)  In the findings and recommendations addressing that motion, the previously assigned magistrate judge also construed this claim as alleging conduct by both Auguayo and Boatright.  (See ECF No. 46 at 5-6.)

**A. Legal Standards for Retaliation Claim**

"Within the prison context, a viable claim of retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment or other rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted). To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. Brodheim v. Cry, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff must provide direct or circumstantial evidence of a defendant's alleged retaliatory motive; mere speculation is not sufficient. See McCollum v. Cal. Dep't of Corr. and Rehab., 647 F.3d 870, 882–83 (9th Cir. 2011); accord Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. McCollum, 647 F.3d at 882 (quoting Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)).

**B. Has Plaintiff Shown a Material Issue of Fact?**

To survive summary judgment, plaintiff must establish a material issue of fact exists with respect to each factor of his claims for retaliation. Because this court finds below that plaintiff has failed to provide sufficient facts to create a dispute regarding defendants' retaliatory motives, it does not reach the remaining Rhodes factors.

**1. Medication Claim**

In his opposition brief, plaintiff simply states that defendant Staggs-Boatright's actions were retaliatory because they only started after plaintiff began to file 602 appeals against her. (ECF No. 103 at 2.) He contends that Staggs-Boatright was the only Psychiatric Technician who

////

9

did not give him his prescribed medication.[6] However, Staggs-Boatright states in her declaration that she did not give plaintiff Benadryl because it was not prescribed. (ECF No. 70-7 at 3.) She did not give him Tramadol on two Sundays in March 2010 because the medication room in his housing unit did not have any with his name on it and she was unable to obtain it from the pharmacy, which was closed on Sundays. (Id.) Plaintiff provides no evidence to rebut these legitimate reasons for the actions taken by Staggs-Boatright. He does not show that he had been prescribed Benadryl or that a prescription for it was unnecessary. Nor does plaintiff show that the pharmacy was open on Sundays.

Further, plaintiff testified in his deposition that he had had "run-ins" with Staggs-Boatright, she did not like him, and he felt she was prejudiced against Black inmates. (Plt.'s Depo. at 58-61.) Whether or not these were motivating factors for Staggs-Boatright's actions, they do not involve the basis for plaintiff's claim – retaliation. Plaintiff never identified any behavior by Staggs-Boatright from which a reasonable fact-finder could infer her actions were retaliatory for plaintiff's grievances. Because the undisputed facts show no retaliatory motive on Staggs-Boatright's part, plaintiff fails to show an issue of material fact. Thus, he cannot prove a necessary element of his retaliation claim and summary judgment should be granted in Staggs-Boatright's favor.

**2. Law Library Access Claim**

Plaintiff's claims against defendants Bradford, Hamad, and Pina have a similar problem and should suffer a similar fate. Plaintiff fails to present facts to establish a legitimate dispute that that these defendants denied him library access and, even if they did, that their actions were done in retaliation for plaintiff's exercise of his First Amendment rights.

////

////

---

[6] The court notes that plaintiff's allegation is that Staggs-Boatright gave plaintiff only 50 mg of Tramadol on March 21, 2010 when he had been prescribed 100 mg. (See Plt.'s Depo. at 64-66; Ex. C to Depo.) However, defendants describe plaintiff's claim as alleging he was provided no Tramadol. This fact is not material because regardless of what, in fact, occurred, plaintiff fails to show Staggs-Boatright took any action with retaliatory intent.

10

### a. Potential Factual Disputes

In his FAC, plaintiff states that he had access to the law library on November 8, 2010. As he was leaving, he submitted a request to return. He received no response to that request. He sent "weekly" requests to "Bradford, Hamad, Pena from Nov. 21, 2010 – March 28, 2011." At the same time, plaintiff submitted paging request for legal materials. He states that these requests were either denied or ignored. (ECF No. 12 at 3.)

Plaintiff states that in late January 2011, he was "forced to file another 602 complaint." He states that the first level response "admitted" that plaintiff had not been to the law library since November 8, 2010. He then submitted that grievance to the second level of review and "continued to submit weekly requests." On March 18, 2011, defendant Hamad interviewed him for the second level response. Plaintiff states that he told Hamad he had a 30-day court deadline but she did not grant plaintiff immediate library access. On March 28, he was allowed access to the law library. (ECF No. 12 at 3-4.) Plaintiff states that the court deadline expired on April 16, 2011. (Id. at 5.)

Plaintiff states that he had altercations with both Bradford and Hamad in April 2011 regarding his requests for copies of exhibits he wanted to submit with his motion due on April 16, 2011. (ECF No. 12 at 5-6.)

Plaintiff disputes some of defendant's factual contentions. However, an examination of plaintiff's various statements and of supporting documentation shows that plaintiff lacks any factual basis for his side of the disputes.

    (i)  Was Bradford responsible for approving or denying requests for law library access?

Plaintiff stated that he addressed his requests to Bradford and that Bradford was responsible for approving or denying them. (ECF No. 103 at 3, 7.) Plaintiff bases his contention that Bradford was responsible on his knowledge of the responsibilities of another library technical assistant ("LTA") at the library where plaintiff has worked. (Id. at 7.) However, plaintiff testified at his deposition that he did not know who was responsible. (Plt.'s Depo. at 30.)

In her declaration, defendant Bradford states that she had no authority to process, approve, or deny law library access requests in 2010-2011. (ECF No. 70-9, ¶ 2.) She further declares that she did not deny plaintiff's law library access requests in 2010-2011. (Id.) Plaintiff presents no facts to support his contention that Bradford's description of her duties during 2010-2011 is not correct. His belief that her duties were the same as the duties of another LTA is based only on his speculation that all LTAs must have the same duties. There is no support for that proposition. Plaintiff's contradictory statements about whether or not he knew who was responsible for approving library access further demonstrate the lack of support for his current assertion. The court finds no reasonable juror would conclude that Bradford either had the authority to consider plaintiff's library access requests or that she denied any of them.

> (ii) Did Pina tell plaintiff to send his library access requests to Bradford?

Plaintiff states in his opposition that Pina told him to send a request for law library access to Bradford. (ECF No. 103 at 3.) However, in his deposition, plaintiff testified that he never spoke with Pina about his library access. He testified that he only communicated with him about library access through his grievance forms. (Plt.'s Depo. at 32.) There is no indication on any of the grievance forms that Pina told plaintiff to address his requests to Bradford. Further, in his FAC, plaintiff does not contend that anyone told him to address access requests only to Bradford. (See ECF No. 12.) The court finds no support for plaintiff's contention that Pina directed him to send requests to Bradford.

> (iii) Did Pina have authority to approve or deny library access request?

Pina declared that in 2010-2011 he was the Law Librarian Officer. (ECF No. 70-5, ¶ 1.) One of his duties was processing and approving or denying requests for access to the law library. (Id. ¶ 2.) Plaintiff testified that he had "no idea" if Pina had anything to do with processing access requests. (Plt.'s Depo. at 31.) Because plaintiff does not directly contest Pina's description of his job duties, the court finds it undisputed that Pina had responsibility for approving or denying law library access requests in 2010-2011.

(iv) Did plaintiff have altercations with Bradford and Hamad before he was denied library access?

In his opposition to the summary judgment motion, plaintiff indicates that his problems with library access resulted from altercations he had with Bradford and Hamad regarding copying exhibits for submission to court and regarding his 602 complaints. (ECF No. 103 at 4.) However, in his FAC, plaintiff stated that those altercations occurred in April 2011, when plaintiff was facing the April 16, 2011 deadline for filing a motion. (ECF No. 12 at 3-4.) Plaintiff provides no factual support for a fact-finder to conclude that plaintiff's altercations with Bradford and Hamad occurred prior to March 28, 2011.

(v) Was plaintiff denied PLU status?

In his opposition to the summary judgment motion, plaintiff states that he showed both Bradford and Hamad a court order stating that he had 30 days to file a motion. (ECF No. 103 at 4.) However, the earliest date plaintiff could have sought access was March 17, 2011 because he identifies the filing deadline as April 16, 2011. (ECF No. 12 at 4.) Plaintiff concedes that he received library access eleven days later, and prior to his deadline, on March 28, 2011. (Id.) The court finds no basis to find that plaintiff was improperly denied PLU status.

**b. Are there Disputed Issues of Material Fact re Plaintiff's Claim of Retaliation in Denying him Library Access?**

The undisputed facts show that defendant Pina received no requests from plaintiff for access to the law library until he received plaintiff's grievance in January 2011. With his response, Pina provided plaintiff with the appropriate forms for seeking library access and for seeking the provision of legal materials. With respect to plaintiff's requests for legal materials, plaintiff failed to properly prepare those requests. Plaintiff does not show that Pina took any actions to his detriment. Further, plaintiff fails to show that even if Pina denied some of his requests, he did so with a retaliatory motive.

With respect to defendant Bradford, plaintiff does not establish that Bradford took any actions to his detriment. In addition, even if Bradford was responsible for denying or ignoring

13

some of plaintiff's requests, plaintiff fails to show that Bradford took that action in retaliation for any conduct by plaintiff.

Finally, plaintiff fails to show any retaliatory actions or motive by defendant Hamad. The undisputed facts show only that Hamad reviewed plaintiff's appeal and granted it in part. Plaintiff presents absolutely no evidence from which a factfinder might conclude that any action Hamad took was motivated by retaliation for plaintiff's grievances.

Plaintiff testified that he does not know why Bradford, Pina, and Hamad denied him access to the library. (Plt.'s Depo. at 33-36.) He provides no basis upon which a fact-finder might find that they acted in retaliation for plaintiff's exercise of his First Amendment right to file a grievance.

**IV. Conclusion**

Plaintiff provides no factual basis to dispute the facts set out by defendants regarding their actions and/or their motivations. Accordingly, plaintiff cannot prove essential elements of his retaliation claims and summary judgment should be granted in defendants' favor.

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant Auguayo be dismissed from this action based on the court's prior dismissal of claim 4; and
2. Defendants' motion for summary judgment (ECF No. 70) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the

////
////
////
////
////

specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 13, 2019

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/morr1171.msj fr